```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                 Civil No.: 20-362(DSD/ECW)
```

Best Academy, a Minnesota
non-profit corporation,
individually and as a successor
in interest to Harvest Preparatory
Charter School, Inc., and
Mastery School, Inc., a Minnesota
non-profit corporation,

        Plaintiffs,

v.                                          **ORDER**

The Hanover Insurance Group Inc. and
Massachusetts Bay Insurance Company,

        Defendants.

---

    Aalok Kumar Sharma, Esq., Stephen E. Schemenauer, Esq., and Stinson LLP, 50 S. 6th Street, Suite 2600, Minneapolis, MN 55402, counsel for plaintiff Best Academy.

    Brian J. Linnerooth, Esq., Kyle R. Hardwick, Esq., and Best & Flanagan LLP, 60 S. 6th Street, Suite 2700, Minneapolis, MN 55402, counsel for Mastery School, Inc.

    Joel T. Wiegert, Esq. and Hinshaw & Culbertson LLP, 333 S. 7th Street, Suite 2000, Minneapolis MN 55402, counsel for defendants.

---

This matter is before the court upon the joint motion for partial summary judgment by plaintiffs Best Academy, Harvest Preparatory Charter School, and Mastery School, Inc. Based on a review of the file, record, and proceedings herein, and for the

following reasons, the court grants the motion.

## BACKGROUND

This insurance coverage dispute arises out of a claim by plaintiffs Best Academy, Harvest Preparatory Charter School (HPCS),[1] and Mastery School, Inc. (collectively, Schools) that defendants The Hanover Insurance Group Inc.[2] and Massachusetts Bay Insurance Company are obligated to defend and indemnify them in an underlying lawsuit in Hennepin County District Court.

**I.  The Policies**

The Schools each have insurance policies with Massachusetts Bay:  Best Academy had a commercial lines policy effective between September 11, 2016, and September 11, 2019;  HPCS had a commercial lines policy effective between September 24, 2016, and September 24, 2017; and Mastery had a commercial lines policy effective between June 29, 2018, and June 29, 2019 (collectively Policies). Sharma Decl. Exs. F-H; Hardwick Decl. Ex. 1.  HPCS cancelled its

---

[1] HPCS merged with Best Academy in 2018, and Best Academy is the surviving entity.  See Sharma Decl. Ex. 4.  The court therefore will refer only to Best Academy unless more specificity is required.

[2] Hanover is a holding company and disputes that it is a proper party in this action.  The parties did not brief the issue, however.  Therefore, for purposes of this motion, the court will assume that Hanover is a properly named defendant.

2

policy following its merger with Best Academy.  Mahmoud Decl. ¶ 2.

The relevant portions of the Policies (the School and Educators Legal Liability (SELL) coverage) are essentially identical and provide coverage for a "claim" arising out of "wrongful act[s] to which this insurance applies" and "which the insured becomes legally obligated to pay as 'loss.'"  Sharma Decl. Ex. F, at 230; id. Ex. G, at 235; id. Ex. H, at 238; Hardwick Decl. Ex. 1, at 232.  The Policies are "claims made" policies, which means that Massachusetts Bay provides coverage only for "'claims' first made against [the insured] during the 'policy period.'" Sharma Decl. Ex. F, at 230; id. Ex. G, at 235; id. Ex. H, at 238; Hardwick Decl. Ex. 1, at 232.  "Claim" is defined as a "written demand for monetary damages" or a "suit against an insured for an 'educators wrongful act' or 'wrongful act' to which this insurance applies."[3]  Sharma Decl. Ex. F, at 241; id. Ex. G, at 243; id. Ex. H, at 246; Hardwick Decl. Ex. 1, at 304.

## II.  CMO Agreements

The Schools are non-profit charter schools that serve underserved and underrepresented elementary school students in north Minneapolis.  Compl. ¶¶ 2-4, 15.  On July 1, 2015, the

---

[3] Other relevant policy provisions will be set forth in the discussion below.

3

Schools each executed separate charter management organization agreements (CMO Agreements) with the Harvest Network of Schools (HNS). Mahmoud Decl. Exs. A-B; Peterson Decl. Ex. 2. Through the CMO Agreements, the Schools essentially outsourced many of their management, administrative, and operational needs to HNS. Mahmoud Decl. Ex. A, at 1; id. Ex. B, at 1; Peterson Decl. Ex. 2, at 1. HNS provided those services in exchange for an annual fee not to exceed eleven percent of each school's forecasted government revenues. Mahmoud Decl. Ex. A ¶ 10; id. Ex. B ¶ 10; Peterson Decl. Ex. 2 ¶ 10. Among those services included budgeting, cash management, accounting, reporting, purchasing, real estate and facilities management, information technology, and clerical and security services. Mahmoud Decl. Ex. A, Schedule of Services, at 3-4; id. Ex. B, Schedule of Services, at 3-4; Peterson Decl. Ex. 2, Schedule of Services, at 3-4.

On February 24, 2016, HNS entered into a Master Lease Agreement with Ricoh USA, Inc. under which Ricoh agreed to provide certain copying, printing, and scanning equipment to HNS. Mahmoud Decl. Ex. C. The same day, HNS and Ricoh entered into a Master Maintenance and Sale Agreement under which Ricoh agreed to provide supplies and services relating to the equipment provided under the Master Lease Agreement. Id. Ex. D. The Schools were not parties to either agreement. See id. Exs. C, D. Under the CMO Agreements,

4

HNS placed the equipment Ricoh provided under the Master Lease Agreement in the Schools for their use. See Compl. ¶ 29. The Schools paid HNS for the equipment under the terms of the CMO Agreements. See id. However, it appears that HNS did not pay Ricoh in full for that equipment. Mahmoud Decl. Ex. E ¶¶ 12-13. HNS dissolved in July 2018. Id. ¶ 2.

### III. The Underlying Lawsuit

On June 5, 2017, Ricoh sent HNS a demand for payment in the amount of $328,705.21. Id. ¶ 29. Ricoh did not include the Schools in its demand. Id. ¶ 30. Having apparently received no payment in response to the demand, Ricoh filed suit in Hennepin County against HNS and the Schools on October 5, 2018, seeking $1,553,443.81 in damages (Underlying Action). See Ricoh USA, Inc. v. Harvest Network of Schools, Inc., et al., Case No. 27-CV-19-6243; Mahmoud Decl. Ex. E. Ricoh brought claims for breach of contract against HNS and unjust enrichment and quantum meruit against the Schools. The Underlying Action remains pending.

### IV. This Action

On December 31, 2019, the Schools commenced this action in Hennepin County District Court seeking a declaration that Hanover and Massachusetts Bay have an obligation to defend and indemnify them for all damages, costs, and attorney's fees incurred in the Underlying Action. The Schools also seek the costs and attorney's

5

fees incurred in bringing this action.  Hanover and Massachusetts Bay timely removed to this court.  The Schools now move for partial summary judgment on the issue of whether Hanover and Massachusetts Bay are obligated to defend them in the Underlying Action.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute

6

exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.  Insurance Coverage**

The sole issue before the court is whether defendants have a duty to defend the Schools in the Underlying Action. In that case, Ricoh alleges that the Schools were unjustly enriched because they benefitted from the use of Ricoh's equipment and services without compensating Ricoh. Mahmoud Decl. Ex. E, at 9-11. The Schools deny the allegations, claiming that they paid HNS for Ricoh's equipment and services under the CMO Agreements. In the context of this case, the Schools argue that the Policies at least arguably cover Ricoh's claims and that no exclusions apply. Defendants disagree on various grounds.

    **A.  Duty-to-Defend Standard**

In Minnesota, the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in

7

accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if it is "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

An insurer has a duty to defend an insured "when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407–08 (Minn. 1998). A court generally compares the terms of the policy with the complaint to determine whether an insurer has a duty to defend. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 313 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). In addition, a court may consider "facts outside the

complaint to determine whether coverage exists." Haarstad v. Graff, 517 N.W.2d 582, 584 (Minn. 1994).  However, there is no duty to defend if coverage is excluded.  Wakefield Pork, Inc. v. Ram Mut. Ins. Co., 731 N.W.2d 154, 159 (Minn. Ct. App. 2007).

The insured must first establish a prima facie case of coverage.  SCSC Corp., 536 N.W.2d at 311.  If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies.  Id. at 313.  The court strictly construes exclusions against the insurer, considering the insured's expectations.  Thommes, 641 N.W.2d at 880.  If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion.  SCSC Corp., 536 N.W.2d at 314.

**B. Coverage**

Two types of coverage are at issue here.  The first relates to "educators liability," which the Policies define as relating to losses "due to a 'claim' arising out of an "educators wrongful act."[4]  Sharma Decl. Ex. F, at 230.[5]  "Educators wrongful act" is

---

[4] The Policies do not include an apostrophe where appropriate, e.g., when using terms such as "educators liability," "educators wrongful act," and the like.  Rather than note the grammatical error each time, the court will quote the policies as written.

[5] Because the Policies are identical for purposes of this motion, the court will cite only to one of the Policies in the remainder of this order.

9

defined, in relevant part, as "any actual or alleged negligent act, error or omission, ... committed by an insured ... [i]n the lawful discharge of the duties that are characteristic of, distinctive or inherent to, the operation and functioning of an educational institution[.]"  Id. at 242.  The Policies provide non-exclusive examples of such duties, including "classroom or other educational instruction;" "career and academic guidance;" "grading and class content;" and "provision of equal access to education under state and federal laws," among others.  Id.

The Schools contend that the copying and printing services provided by Ricoh were necessary to carry out their educational mission, and therefore fall within the definition of an "educators wrongful act."  Defendants respond that because copying equipment is used in nearly every commercial business, such equipment and related services are not "characteristic of, distinctive or inherent to, the operation and functioning of an educational institution," as required by the Policies.  The court agrees with defendants on this point.  The plain language of the "educators liability" portion of the Policies makes clear that it is designed to cover substantive wrongdoing by an educator, rather than conduct relating to non-substantive or ministerial matters such as the copying and printing of documents.  See id.  As a result, the

10

court finds that the Schools have not established a prima facie case of coverage under the "educators liability" portion of the Policies.

The second type of coverage at issue relates to "directors and officers liability," under which defendants "will pay on behalf of the 'insured entity' all 'loss' for which the 'insured entity' is legally obligated to pay due to a 'claim' arising out of a 'wrongful act' to which the insurance applies." Id. at 230. A "wrongful act," is defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an insured while acting in the scope of their duties for the Named Insured." Id.

The Schools argue that there is at least arguable coverage under this provision because the Underlying Action alleges that they engaged in a "wrongful act" when they failed to pay Ricoh. Defendants respond that the Schools' alleged failure to pay Ricoh does not constitute a "wrongful act" because Ricoh does not allege that the Schools engaged in tortious misconduct. Defendants' argument ignores the plain language in the Policies, which broadly defines "wrongful conduct" to include both intentional and negligent acts and omissions, which Ricoh alleges in the Underlying Action.

11

Defendants also argue that there is no coverage because quasi-contractual claims do not constitute a "claim" within the meaning of the Policies. The court again disagrees. The Policies do not narrowly define "claim" to include legal but not equitable causes of action.

The court is similarly dissuaded by defendants' argument that Ricoh does not allege a "loss" under the Policies because the remedy sounds in restitution rather than damages. The Policies broadly define "loss" as a "compensatory monetary award, settlement or judgment that the insured is legally obligated to pay, including costs and attorney's fees awarded pursuant to a judgment." Sharma Decl. Ex. F, at 242. As an initial matter, the Policies do not exclude "restitution" from their definition of "loss." See id. at 242-43. And, in any event, Ricoh seeks "damages" to cover its uncompensated performance – in other words a "compensatory monetary award" – in the Underlying Action. Mahmoud Decl. Ex. E, at 11.

Defendants next argue that finding coverage in this case would create a "moral hazard" because it would encourage the Schools to act irresponsibly because they know similar losses would be covered by insurance. See Land O' Lakes, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis., 846 F. Supp. 2d 1007, 1035 n.27 (D. Minn. 2012)

12

(quoting 1-1 New Appleman on Ins. Law Libr. Ed. §1.01[4][b] (2011)) ("Moral hazard describes a behavioral reaction when a party is protected from the consequences of a risk. The protected party ... may have a tendency to act less carefully because someone else will bear the consequence of any resulting loss. The less careful behavior makes it more likely that a loss will occur."). But this case does not implicate a moral hazard. Nothing in the Underlying Action suggests a wanton or reckless disregard of duties or obligations by the Schools that would create a "moral hazard" if there is a finding of coverage.

In sum, the court is satisfied that there is at least arguable coverage under the Policies.

**C.   Exclusion**

Defendants contend that the "Illegal Financial Gain" exclusion applies, thereby precluding coverage. Under the Policies, "Illegal Financial Gain" is defined as any claim "arising out of the insured obtaining or attempting to obtain remuneration or financial gain to which such insured was not legally entitled." Sharma Decl. Ex. F, at 232. According to defendants, this exclusion precludes coverage for any claims of unjust enrichment. But defendants' brief argument in support of their position is not sufficient to meet their burden of establishing that the exclusion

13

applies.

The court is not persuaded that unjust enrichment claims are categorically excluded, let alone excluded under the facts as alleged in the Underlying Action. Ricoh does not allege that the Schools received something that they were not "legally entitled" to receive. Rather, Ricoh seems to acknowledge that the Schools were allowed, under the CMO Agreements, to use and benefit from Ricoh's equipment and services. Mahmoud Decl. Ex. E ¶¶ 27-28. Ricoh simply alleges that the Schools should have to pay it directly for such use. Under these circumstances, the court declines to find that the exclusion applies in the context of this motion.

### III. Coverage for HPCS

Defendants argue that HPCS is not covered because it cancelled its policy effective July 1, 2018, and Ricoh's claim was not filed against it until October 5, 2018. According to defendants, because HPCS's policy is a "claims made policy," i.e., a policy under which the claim must be made within the policy period, HPCS cannot be covered for any losses. See Sharma Decl. Ex. H, at 238. As noted, however, HPCS merged with Best Academy in 2018, and Best Academy is HPCS's successor in interest. Therefore, even if HPCS is not covered – a determination yet to be made – Ricoh's claims

14

against HPCS are the same as and effectively subsumed by the claims against Best Academy.  As a result, HPCS's policy cancellation does not affect the court's determination that defendants have a duty to collectively defend the Schools in the Underlying Action.

**IV.  Request for Relief under Fed. R. Civ. P. 56(f) or 56(d)**

Although defendants did not cross move for summary judgment, they argue that they should be awarded summary judgment based on the current record.  Given the court's ruling above, the court declines to grant summary judgment to defendants.

Defendants alternatively request discovery under Rule 56(d) to further develop the record before the court rules on the Schools' motion.  Again, based on the above discussion, the court finds that the record is sufficient to permit a ruling on the issue of the duty to defend.  As a result, the court denies defendants' request for discovery.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that

1. The joint motion for partial summary judgment [ECF No. 18] is granted; and

2. The Hanover Insurance Group Inc. and Massachusetts Bay Insurance Company have a duty to defend Best Academy, Harvest

15

Preparatory Charter School, and Mastery School, Inc. with regard to the action styled <u>Ricoh USA, Inc. v. Harvest Network of Schools, Inc., et al.</u>, Case No. 27-CV-19-6243, pending in Hennepin County District Court.

Dated:  August 14, 2020        s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court